Eames v. Der Germania Turn Verein.

HENRY F. EAMES

v.

DER GERMANIA TURN VEREIN.

1. STATEMENT.—Appellee made with appellant and others a written contract for the purchase of certain lots, making the first cash payment, placed the contract upon record, and afterwards took possession of the property and collected rents from the tenants. At the time the contract was made an abstract of title was furnished by appellant, examined by appellee's attorney, and the title pronounced good. A subsequent examination by

other attorneys was made, who pronounced the title defective, and appellee, without offering to return the property, brought suit for the money paid.

2. TAKING POSSESSION UNDER CONTRACT—ESTOPPEL.—The contract in its inception was not absolute, but conditional, dependent upon whether upon examination the title should prove valid; but appellee, after payment of part of the purchase-money, taking possession of the premises, causing material alterations as to part of them, collecting rents, and treating the contract as valid and subsisting, is now precluded from taking the position that the contract remains conditional.

3. LEGAL EFFECT OF APPELLEE'S ACTS.—The legal effect of appellee's acts is to convert the contract into an absolute one, so that an action for the purchase-money cannot be maintained, but does not absolve the vendors from their obligation under such contract to convey to the purchaser at the proper time, a good title free of incumbrance.

4. DEPENDENT CONDITIONS.—By the terms of the amended agreement the time for certain payments was fixed, at which time the purchaser was also to execute notes and mortgage for the deferred payments, and the vendors were to execute their deed. These acts were mutual, dependent and concurrent. Before the time of payment the vendors were not obliged to be in a situation to perform.

5. RESCISSION.—In order to a rescission of a contract for the sale of lands, so that the purchaser may recover back the purchase-money, he must not only not be in default himself, but he must show an entire breach on the part of the vendor.

6. VENDOR NOT INCAPACITATED TO PERFORM.—Where the vendor has not incapacitated himself from performing by conveying to a third party after the contract, the purchaser, in order to put the vendor in default, should offer to perform on his part, and make a demand for a deed of the vendor.

7. RESTORATION ON RESCISSION BEFORE SUIT BROUGHT.—The right to rescind must be complete before bringing suit, and wherever restoration is indispensable to a rescission, it must be made before bringing the suit.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS A. MORAN, Judge, presiding. This Opinion was filed December 13, 1880, but was omitted from volume 7, and is inserted here at the end of the opinions of the March Term, 1881.

This was an action for money had and received, brought April 30, 1872, in the Cook Circuit Court, by Der Germania Turn Verein, against appellant, Eames and Matthew Laflin, to recover back the purchase-money paid by plaintiff to defendants, under a contract for the sale and conveyance, by the latter to the former, of certain real estate. The defendants having pleaded the general issue, the case was tried April 27, 1874, and resulted in a judgment against defendants for $2,439, be-

Eames v. Der Germania Turn Verein.

sides costs, and they appealed to the Supreme Court, where the judgment was reversed and cause remanded. 74 Ills. 56. On the case being re-docketed below, the plaintiff dismissed the suit as to Laflin, and it was again tried May 29, 1880, and judgment rendered against Eames alone for $1,450. The latter taking the proper exceptions and preserving the testimony by bill of exceptions, brings the case to this court by appeal.

It appears that appellant owned 25 feet frontage on State Street, in Chicago, his wife 40 feet, and Laflin 25 feet. This ownership was in severalty, but by their agents these several owners June 8, 1870, all joined in an agreement for a sale and conveyance of said lots to plaintiff for an entire consideration, as follows:

CHICAGO, June 8th, 1870.

Received of Der Germania Turn Verein the sum of five hundred dollars, being on account of cash payment on purchase made by them this day of us, as agents, of the following described property: The north (3 34-100) three and thirty-four one hundredths feet of the west ($\frac{1}{2}$) one-half of block (18) eighteen; also lots (10) ten, (11) eleven, and (12) twelve, in block (25) twenty-five—all in the assessor's subdivision of the northwest frac. quarter ($\frac{1}{4}$) section twenty-two (22), T. 39, N. R. (14) fourteen, E. of 3d P. M.; also the south (27) twenty-seven feet of the north 168 feet of the west half of block (18) eighteen, in assessor's subdivision of the southwest fractional ($\frac{1}{4}$) quarter, section 22, T. 39, N. R. 14, E. 3d P. M., lying and being north of and adjoining the 34-100 feet of the west $\frac{1}{2}$ of block 18, of assessor's subdivision of the northwest $\frac{1}{4}$ section 22, T. 39, N. R. 14 E. 3d P. M.

The price to be paid for said premises being thirty-three thousand dollars ($33,000), payable ($9,000) nine thousand dollars cash, of which the above five hundred dollars is a part and the balance to be paid as follows, to wit: ($4,598) four thousand five hundred and ninety-eight dollars on September 30th, 1870; ($6,250) six thousand two hundred and fifty dollars in one and two years, at eight per cent. interest; and ($13,152) thirteen thousand one hundred and fifty-two dollars in three years at 8 per cent. interest; date of all de-

ferred payments of notes to be made from the date of delivery of deed and possession of property.

In case the first payment is not made as above provided for, and no valid objection be found to the title, the money now paid is to be retained as liquidated damages, and this contract to become null and void. Time is hereby declared to be of the essence of this agreement, 10 days to be given for examination of abstract after delivery thereof. It being understood that in case the title to above described premises proves upon examination to be invalid, this sale shall be null and void, and the above five hundred dollars refunded.

The said Germania Turn Verein to receive a good and sufficient warrantee deed, executed by the owners in fee of said property, giving as security for the deferred payments, notes secured by trust deed or mortgage.

[Signed,]    ULRICH & HOFFMAN,    [SEAL.]

ROGERS FOWLER, Agt.    [SEAL.]

[Signed,] GERMANIA TURN VEREIN,

By PETER WOLF, } Committee.
     B. Baum,

The record shows that plaintiff, at the time of making the contract, made a deposit with Sellers of $500, and that immediately thereafter the latter furnished plaintiff with abstracts of title. It is admitted that the title to the 25 feet belonging to Laflin was unobjectionable; and that the title to the 65 feet belonging to Eames and wife was unobjectionable, unless a certain decree of the Superior Court of Chicago rendered in June, 1868, in a suit wherein one Lawrence had filed a bill against David A. Gage and others to forclose a mortgage upon other and separate property from that in question, was a lien upon the said 65 feet, on the ground that Gage held the title to it when said decree was rendered. The abstract so furnished showed all the facts; the ownership of Gage at the time, the court in which the suit was, the title of the cause, date of the decree, and the finding of the court, that there was due from Gage and his co-defendants to Lawrence, the sum of $51,281.99, which the decree required should be paid by the defendants in that suit to the complainant, Lawrence, with

interest at 6 per cent. in ten days, or in default thereof, the interest of the defendants in the mortgaged premises be sold by a master in chancery; the decree also providing that if the money arising from such sale should be insufficient to pay the amount of the decree, then Lawrence to have execution against the defendants for the balance.

The record shows that said abstract, showing all said matters, after being furnished to, was submitted by plaintiff to its own attorney for examination; and the latter, after requiring that certain defects be obviated, which was done, approved the title and so notified the parties; also, that the plaintiff caused the contract to be recorded in the recorder's office of Cook county, where the land is; that soon after such approval of the title, plaintiff paid towards Laflin's portion of the cash payment, $500, and obtained from him an extension until the 13th of August, 1870, for the residue thereof, which he might receive under the contract; that July 14, 1870, plaintiff paid $1,500 towards the Eames' portion of said cash payment, and obtained an extension of thirty days as to the balance.

Of this $1,500, it appears that Eames received only $1,000, which, with the interest, was what plaintiff sought to and did recover against him on the last trial; that soon after these last mentioned payments the plaintiff required of the sellers the immediate possession of the bargained premises; that on the 25 feet belonging to Laflin there was a house belonging to a tenant who occupied under a lease from Laflin of the ground; that plaintiff required that house to be moved off by Laflin, and that he get the occupant's leasehold extinguished, which was done at Laflin's expense, the whole costing him $510; that tenants were in possession of the Eames portion, and the latter was required by plaintiff to put plaintiff in possession by having such tenants attorn to plaintiff, and that that was done; that plaintiff collected the rents from and including the months of August, September, and to and including the month of October, 1870.

It also appears that in July, 1870, one of the shareholders of the plaintiff corporation caused said abstract to be examined by Rosenthal & Pence, and that they gave it as their opinion

that said Gage decree was a lien on the Eames portion of the bargained premises; whereuhon the secretary of plaintiff cor poration notified Eames of the objection, and he promised to make his title all right; and plaintiff notified Eames that the contract was rescinded. But there was no evidence of any raud or misrepresentations on the part of the sellers, or either of them, or their agents; or that plaintiff has ever paid, or offered to pay, any portion of the sun paid out by Laflin in removing said house and extinguishing said lease; or that plaintiff ever made or offered to make any quit-claim back to the sellers of its equitable title apparent on the record, except that on the 1st trial below such deeds were executed, produced, and left with the clerk of the court for Laflin & Eames against the objection of the defendant that it was too late. Nor does it appear that plaintiff was ever ready or offered to pay the resi- due of the cash payment, or demanded a deed of the bargained premises, while it does appear that the sellers had their deeds prepared according to the contract, and were ready and willing to deliver them on such payment being made. It further appears that the Gage decree was taken to the Supreme Court and there affirmed, and that thereupon a writ of error from the Supreme Court of the United States, upon such judgmen of the State Supreme Court, was sued out, and by compliance with the rules of such federal court, the writ of error was made a supersedeas; and although pending from May, 1869, to December, 1870, that it was dismissed for want of jurisdic- tion.

Messrs. SLEEPER & WHITON, for appellant; that this is not a stipulation for an unencumbered title, but a valid title to be followed by a warranty deed, cited Vroman v. Darrow, 40 Ill. 171; Seton v. Slade, 3 Lead. Cas. in Eq. 79; Bishop v. Nav- lan, 20 Ill. 175; Willetts v. Burgess, 34 Ill. 494; Wallace v. McLaughlin, 57 Ill. 57; Brown v. Witter, 10 Ohio, 142; Owings v. Thompson, 3 Scam. 508.

To justify an abandonment of the contract, the failure of the opposite party must be told: Selby v. Hutchinson, 4 Gilm. 233; Doggett v. Brown, 28 Ill. 495.

A deed should have been demanded before the appellant

could be put in default: Foster v. Jared, 12 Ill. 451; Doggett v. Brown, 28 Ill. 495; Asbaugh v. Murray, 90 Ill. 182; Cassell v. Ross, 33 Ill. 245; Willetts v. Burgess, 34 Ill. 494.

It is a question for the court whether the abstract disclosed an invalid title: 4 Chicago Legal News, 237

Appellee is precluded by its own acts from rescinding the contract: Alexander v. Crosby, 1 Jones & La. T. 666; 1 Dart on Vendors, 309; 1 Sᵣgden on Vendors, 218; Hilliard on Vendors, 315.

The vendors are willing to affirm the contract, and the cash payment cannot be recovered: Hamburgh v. Peck, 5 Wall, 497.

The purchaser cannot rescind until the last payment is due, and the vendor has failed to clear off the lien: Runkle v. Johnson, 30 Ill. 328; Monson v. Stevens, 56 Ill. 337; Harding v. Com. Loan Co. 84 Ill. 261; Green v. Green, 9 Cow. 485.

Action for money paid on deposit for purchase of land, where the vendor fails to make good title, cannot be maintained without showing tender of purchase-money and demanding title: Hilliard on Vendors, 484; Sugden on Vendors, 241; Hudson v. Swift, 20 Johns. 24; Irvin v. Blakely, 67 Pa. St. 28.

Tender of re-conveyance by the purchaser before action brought, was necessary : Owings v. Thompson, 3 Scam. 508; Selby v. Hutchins, 4 Gilm. 333; Buchanan v. Harney, 12 Ill. 336; Jennings v. Gage, 13 Ill. 310; Murphy v. Lockwood, 21 Ill. 611; Gehr v. Hagerman, 26 Ill. 438; Deal v. Dodge, 26 Ill. 458; Doggett v. Brown, 28 Ill. 493; Sanford v. Emery, 34 Ill. 468; Vroman v. Darrow, 40 Ill. 171; Vinings v. Leman, 45 Ill. 246; Whitlock v. Dellinger, 59 Ill. 96; Yazel v. Palmer, 81 Ill. 82; Martin v. Chambers, 84 Ill. 579; Long v. Saunders, 88 Ill. 147; Bond v. Ramsey, 89 Ill. 29; Hilliard on Vendors, 317; Sugden on Vendors, 343; Doyle v. Teas, 4 Scam. 202; Willey v. Howard, 15 Ind. 169; Osborn v. Dodd, 8 Blackf. 409.

Mr. ADOLPH MOSES, for appellee; that a stipulation for a warranty deed is in effect only a covenant for quiet enjoyment,

cited Bostwick v. Williams, 36 Ill. 70; Rawle on Covenants, 217; Murphy v. Lockwood, 91 Ill. 611.

This action is not prematu·e: Rawle on Covenants for Title, 73; Vardeman v. Lansen, 17 Tex. 16.

A client is not bound by his counsel's acceptance of a defective title, even if the defect appears in the abstract: Deverel v. Lord Bolton, 18 Ves. 505; Stewart v. Alliston, 1 Menriv. 33; Dawson v. Lawson, 1 K. and J. 292; Bower v. Stenson, 24 Beav. 631.

McALLISTER, P. J.   The contract in question was not in its inception absolute, but conditional. The purchaser made a deposit of five hundred dollars; the sellers were to furnish abstract of title to the bargained premises, which purchaser was to have ten days to examine; then it contained the express provision that if, upon such examination, the title proved to be invalid, the sale was to be null and void, and said deposit was to be refunded. The abstract was furnished, truly representing the state of the title, which it is stipulated in the case was good, unless the Gage decree in the foreclosure suit respecting other property, was a lien. If a lien, it practically affected two lots of the three contracted for to the extent only of a contingent possibility of their being subject to make up any deficiency there might be in case the mortgaged premises proved insufficient on Master's sale to satisfy the whole amount found due by said decree. The purchaser's counsel having after examination pronounced the title good, we are of the opinion that the purchaser, in thereupon, having the contract recorded in the recorder's office of the county; in proceeding with a partial execution of it by paying two thousand dollars upon the first payment, obtaining an extension of the time of the payment of the residue till the thirteenth of August, 1870, by a written modification of the contract; by taking possession of the premises, causing material alterations as to part of the premises, and collecting the rents for three months upon the residue, thereby in the most emphatic manner treating it as valid and subsisting, is precluded from taking the position that the contract remained conditional, and that the case should now be

determined in the same way as it would if such purchaser, upon such examination of the abstract, had then objected to the title, and brought suit to recover back the deposit as money had and received to its use. In such an action the right of recovery would, doubtless, depend upon the actual state of the title at that time. But this suit is brought to recover back purchase money paid by the plaintiff after it had approved the title and treated the contract as valid and subsisting as above stated; the legal effect of which must be to convert such orig inally conditional contract into an absolute one; but not to absolve the sellers from their obligation under such absolute agreement to convey to the purchaser at the proper time a good title to the bargained premises free of incumbance, if that was the legal effect of such obligation. There are decided cases which seem to go the length of holding that a purchaser thus conducting would be considered as having waived all objections to the title. Barnet v. Gaines, 8 Ala 373; Roach v. Rutherford, 4 Desaus. 126; Burnell v. Brown, 1 Jac. & W. 168; Fluder v. Cocker, 12 Ves. 25; Calcraft v. Roebuck, 1 Ves. jun. 226, note 2.

We are, however, not inclined to go that length in the effect we give to such acts, only regarding them as amounting to a conclusive recognition by the purchaser of the valid and subsisting character of the contract, as absolute, with the condition thus waived, the same as if it had been made in the first instance without such condition, and its terms just as binding and obligatory. By those terms, as modified, after the approval of the title by the purchaser, the latter was bound to pay the balance, being $6,500, of the first payment on the 13th day of August, 1870; also to prepare and offer the notes for the deferred payments, with a mortgage or trust deed; at which time the sellers, as we construe the agreement; were to execute the deed in pursuance of their agreement, which required, as we are inclined to hold, that a conveyance of a good title free of incumbrance, should be made. This conclusion we base upon the intention of the parties and the words employed The five hundred dollars was to be received on account of the cash payment, on the purchase of the following described prop-

erty. The money was to be paid, not for a deed of a particuar form, but for the property itself.

Then the last clause of the agreement is: "The said Germania Turn Verein to receive a good and sufficient warranty deed, executed by the owners in fee of said property."

This agreement seems to us unlike any that has received the condsideration of our Supreme Court; and, acting upon the decisions in other States, we are strongly inclined to the opinion that the legal effect of the agreement was that the sellers should convey a good title to the property, free of incumbrance. Clute v. Robinson, 2 Johns. 213; Carpenter v. Bailey 17 Wend. 244; Burwell v. Jackson, 5 Selden, 535; Mead v. Fox, 6 Cush. 199; H ll v. Hobart, 16 Maine, 164.

We have seen that by the modification (which was made July 14, 1870,) the payment, which, as the agreement originally stood was to be made in cash, no time being specified became payable at a particular day in the future; at which time the purchaser was also to give the notes, mortgage, etc., for the deferred payment; and at the same time the sellers were to execute their deed. These acts were therefore mutual, dependent and concurrent. It was like the ordinary agreement between seller and purchaser of real estate, where the conveyance was to be made concurrently with the payment and security of the purchase m ney, at a particular future day. There was nothing express or implied in or from the agreement, to take the case out of th general rule applicable to such cases. The seller was not bound to be actually in a situation to perform, either at the time the contract was entered into, or at the time said modification was made.

If, therefore, there had been imperfections in the seller's title, at either of those times, the purchaser could take no advantage of them, provided the former were able, in proper time, to place themselves in a situation to perform. Thompson v. Miles, 1 Espinasse R. 184.

Chitty says: "But it is not necessary that the vendor should be actually in a situation to perform his contract at the time it is entered into, provided he be able, in proper time, to place himself in that situation. And therefore the fact of there

being imperfections in the title at the time of the contract will form no ground of objection thereto, if such imperfections can be removed before the time of completing the purchase." Chit. on Contracts, 10th Am. Ed. 336.

This rule is elementary in the law of the contract, and has been repeatedly recognized by our Supreme Court. Mason v. Stevens, 56 Ill. 335.

In bills by vendors for specific performance it is the universal rule, that if the seller can give a good title at the time of the decree, it is sufficient.

There is no pretense in this case of any fraud on the part of the sellers, or that the contract was rescinded by any express mutual consent. If, therefore, a rescission is to be made out at all, it must be solely upon a constructive assent arising from a breach of the contract by the sellers, in that, upon an offer of performance by the purchaser, and demand of deed, the sellers neglected or refused to perform, or that they had incapacitated themselves from performing by conveying their title absolutely to a third person. In Franklin v. Miller, 4 Ad. & Ell. 599, Coleridge, J., said: "The rule is, that in rescinding as in making contracts both parties must concur. In Withers v. Reynolds each load of straw was to be paid for on delivery. When the defendant said that he would not pay for his loads on delivery, that was a *total* failure, and the plaintiff was no longer bound to deliver. In such case, it may be taken that the party refusing has abandoned the contract." Planche v. Colburn, 8 Bing. 14. This doctrine of constructive consent to a rescission was recognized and applied in Banister v. Read, 1 Gilm. 99, and Baston v. Clifford, 68 Ill. 67.

It is not pretended that in the case at bar the sellers had incapacitated themselves by any disposition of the property, or that they ever refused to perform. On the contrary the case shows they had their deeds prepared and were ready and willing to perform.

Now, we regard the law as well settled and clear, that in order to a rescission of a contract of sale and purchase of real estate, so that the purchaser may recover back purchase money as money had and received to his use, the latter must not only

not be in default himself, but he must show an entire breach on the part of the seller; in other words, he must be in such position in respect to performance on his part, and non-performance on the part of the vendor, that he can affirm the contract and maintain an action upon it against the vendor; or disaffirm it, and maintain an action for money had and received to his use. These propositions are supported by the cases of Ketchum v. Everstor, 13 Johns, 359; Green v. Green, 9 Cow. 46 ; both of which have been repeatedly cited with approval by our Supreme Court. Wheeler v. Mather, 56 Ill. Ill. 247; Bryson v. Crawford, 68 Ill. 366. See also Hanshough v. Peck, 5 Wallace, 497.

Sugden says: "Where the purchaser has paid any part of the purchase money and the seller does not complete his engagement, so that the contract is totally unexecuted, the purchaser may affirm the agreement by bringing an action for the non-performance of it; or he may disaffirm it and bring an action for money had and received to his use." 1 Sug. on V. & P. chap. 5, sec. 4, art. 39, p. 236.

As already stated, the purchaser here was bound to pay the balance, being sixty-five hundred dollars, to complete the first payment, which, with the giving of the notes and mortgage for the deferred payments, was to be done on a particular day, at which time the sellers, as a mutual dependent and concurrent act, were to execute the deed. It is not pretended in the case that the plaintiff was ready, willing, or offered to perform on its part at that time or any other; or made any demand for a deed in conformity with the contract or otherwise. Sergeant Williams in note 5, to Pordage v. Cole, 1 Saunders, 330, says: "Where two acts are to be done at *the same time*, as where A covenants to convey an estate to B on such a day, and in consideration thereof B covenants to pay A a sum of money on the *same day*, neither can maintain an action without showing performance of, or an offer to perform his part, though it is not certain which of them is obliged to do the first act; and this particularly applies to all cases of sales."

Where, under a contract for the sale and purchase of real estate, the purchase money is to be paid or secured and the

Eames v. Der Germania Turn Verein.

conveyance executed on a particular day, and neither party performs or offers to perform, neither party can maintain an action at law, without a tender of the deed by one party, or the purchase money by the other.    Stevenson v. Maxwell, 2 Comstock, 408.

We understand the rule to be inflexible in a case like this, where the seller had not incapacitated himself from performing, by conveying to a third party after the contract (Sir Anthony Main's Case, 5 Coke, 39) that, the purchaser, in order to put the sellers in default, should have offered to perform on its part, and made a demand for the deed of the sellers.    Hudson v. Swift, 20 Johns 24; Burwell v. Jackson, 5 Seld. 535; Laird v. Smith, 44 N. Y. 618; Foster v. Jared, 12 Ill.; Doggett v. Brown, 28 Ill. 495.

It is idle to talk about it being unsafe for this purchaser to proceed with the performance of the contract; for, when they were ready and offered to perform, if the sellers had not then such a title as they agreed to give, the purchaser need not part with his money.    It is the object in making such acts of payment and conveyance mutual, dependent, and to be simultaneously performed, that the purchaser need not part with his money, unless he can get the title bargained for; and that vendor need not part with his title, until he receives the consideration.

It seems perfectly clear to us, that here the contract was not rescinded by mutual consent either actual or constructive because the sellers did not incapacitate themselves from performing; never refused to perform, and they were not put in default by an offer and demand by the purchaser.

There is another point made, which is not very material in the view we have taken of the case, and that is that the sellers could not, under the circumstances, be placed *in statu quo*, or at least that they were not before suit brought, because the purchaser never quit-claimed back its equitable title apparent on the record until during the last trial of the case.    As to the general doctrine, Hunt v. Silk, 5 East, 449, is a leading case.

The contract being recorded, it was a cloud on the seller's title.    Larmon v. Jordan, 56 Ill. 204.    Appellee's counsel

Eames v. Der Germania Turn Verein.

seems to concede that such quit-claim was indispensable to a rescission, but insists that it might properly be done on the trial, and need not be before suit brought. That cannot be the law. The right to rescind must be complete before bringing the suit; and wherever restoration is indispensable to a rescission, it must be made before suit is brought. Norton v. Young, 3 Greenleaf, 30. The judgment of the court below will be reversed and the cause remanded.

Reversed and remanded.